Karen A. COLES, Plaintiff,

v.

Stephen A. PERRY, Defendant.

Civ.A. No. 01–0732 (JMF).

United States District Court,
District of Columbia.

June 27, 2003.

Robert Charles Seldon, Seldon Anderson, P.C., Washington, DC, for plaintiff.

Meredith Manning, Hogan & Hartson, L.L.P., Washington, DC, Daria Jean Zane, U.S. Attorney's Office, Washington, DC, David Jackson Ball, Jr., U.S. Attorney's Office, Civil Division, Washington, DC, Daria Jean Zane, Jane M. Lyons, U.S. Attorney's Office, Washington, DC, for General Services Administration federal defendant.

### MEMORANDUM OPINION

FACCIOLA, United States Magistrate Judge.

I herein resolve all the parties' Motions *In Limine*. I will begin my analysis with plaintiff's Motions *In Limine* and follow with defendant's Motions *In Limine*.

### Plaintiff's Motions *In Limine*

I. *Plaintiff's Motion to Strike Defendant's "Supplemental" Expert Report*

A crucial witness in this case will be Dr. Bruce Butler. It was Dr. Butler whose report lead to the defendant's determination

that plaintiff was no longer fit for duty as a Special Agent. The Equal Employment Opportunity Commission ("EEOC") administrative law judge was sharply critical of Dr. Butler and I anticipate that plaintiff's expert witness, Dr. Paul Raford, will also be sharply critical of Dr. Butler. Dr. Butler is a central actor in this piece and it is understandable that both sides have named him as a potential witness.

Judge Kessler ordered that all expert reports be filed by January 15, 2002. On that date, the defendant filed Dr. Butler's report of October 28, 1998. This report, which was criticized by the EEOC administrative judge, led defendant to remove plaintiff from her post as Special Agent.

On February 25, 2002, Dr. John Starr testified during his deposition that he had ordered a functional capacity evaluation of plaintiff. *Opposition to Motion to Strike Expert's Supplemental Report* at 1. That evaluation was done by a physical therapist on April 20, 1998, and plaintiff identified it in her initial disclosures that were served on defendant on September 10, 2001. *Reply Memorandum in Support of Plaintiff's Motion to Strike Defendant's Supplemental Expert Report* at 2. By letter dated October 8, 2001, plaintiff's counsel advised the Assistant United States Attorney who was then representing defendant that virtually all of the documents identified in her initial disclosures were produced during the EEOC process. He represented that they had now been "indexed and organized." Counsel nevertheless indicated that, if the defendant insisted and wanted everything copied, he would do so. The Assistant insisted that the documents be copied and plaintiff's counsel did so and delivered them. *Id.* at 2–3.

Unfortunately, at that point, the agreement as to what happened ends. During his deposition, another doctor named Radford testified that he had reviewed the functional capacity evaluation that the physical therapist had done. *Plaintiff's Motion to Strike Defendant's Supplemental Expert Report* at 2–3. By letter of February 20, 2002, defendant's new counsel asked plaintiff's counsel to provide her with a copy of the functional capacity evaluation. At that point, Judge Kessler stayed the case. Understandably, counsel for both sides turned their attention to other matters and there appears to have been no answer to the letter of February 20, 2002. When the stay was lifted, defendant's counsel indicated that, as counsel had agreed, she had gone through an index plaintiff provided and had identified documents that had not been produced. *Opposition to Motion to Strike Expert's Supplemental Report* at 3. She asked that they be provided. On that extensive, six page list, the functional capacity evaluation is listed as missing. *Id.,* Exhibit 5. In a subsequent letter, counsel for defendant challenged plaintiff's counsel's suggestion that the missing documents had been misplaced by her predecessor as incorrect. She insisted that the documents had never been removed from the boxes in which plaintiff had delivered them.

In any event, defendant thereafter got the functional capacity evaluation and made it available to Dr. Butler. He then produced what he called a Supplemental Opinion in which he explained why the functional capacity evaluation supported his opinion. *Id.* at 5. Plaintiff then moved to strike it on the obvious ground that the report, filed on September 1, 2002, missed Judge Kessler's deadline for the submission of expert reports by months. Defendant protested that it did not have the functional capacity evaluation report until after that deadline had passed, and it was impossible for Dr. Butler to speak to its contents until he got it from the government.

 The crucial factual question is whether the functional capacity evaluation report was given to defendant in September 2001. If it was, defendant's not bringing it to Dr. Butler's attention until August 2002 is inexcusable. But, on this record, it is impossible to resolve whether plaintiff delivered the report to defendant's counsel in September 2001. In any event, it must first be recalled that Fed.R.Civ.P. 26(e) does not grant a license to supplement a previously filed expert report because a party wants to, but instead imposes an obligation to supplement the report when a party discovers the information it has disclosed is incomplete or incorrect. Since the defendant does not claim that it had previously informed plaintiff

of any information that Dr. Butler's supplemental report corrected, then Fed.R.Civ.P. 26(e) is not authority for the filing of the report after the deadline Judge Kessler set.

■ The interest served by requiring the disclosure of expert opinions is self evident. It is to prevent unfair surprise at trial and to permit the opposing party to prepare for the expert's cross examination. By "locking" the expert witness into what Fed.R.Civ.P. 26(a)(2)(B) calls "a complete statement of all opinions to be expressed and the basis and reasons therefor," the opposing party knows exactly what she is facing and can decide whether to take the deposition of the expert and how to prepare for cross examination and rebuttal. When the expert supplements her report by addressing a new matter after discovery has ended, the very purpose of the rule is nullified. I, therefore, am obliged by these rules to strike the report.

I hasten to add that I am assuming plaintiff took Dr. Butler's deposition and plaintiff's counsel did not inquire about how his 1998 report would have been affected by the functional capacity evaluation. If I am wrong and plaintiff so inquired, then the purposes of Fed.R.Civ.P. 26(a)(2)(B) have been satisfied and I will reconsider this decision.

II. *Plaintiff's First Motion In Limine (Collateral Source)*

Plaintiff received worker's compensation from the Department of Labor from July 1999 through November 2001. *Plaintiff's First Motion In Limine* at 1. Plaintiff became eligible for worker's compensation after being reassigned from her position as a Special Agent to the position of management analyst, one grade lower than her original position and outside law enforcement. *Id.* Plaintiff wants the Court to preclude any evidence regarding the actual dollar amount of worker's compensation provided to her by the Department of Labor, Office of Workers' Compensation Program ("OWCP"). Plaintiff invokes this request under the collateral source rule in order to prevent defendant from setting-off the damage award by the amount of worker's compensation.

Defendant objects to a resolution of this issue now because the Court does not need to address the issue of damages until the jury finds that the alleged discrimination actually existed. I agree and defer the decision until the end of trial. The actual issue of whether or not to set-off the damage award with the money received from worker's compensation is not relevant unless the jury finds that defendant indeed discriminated against plaintiff. Plaintiff must win before I rule on how damages are assessed.

III. *Plaintiff's Second Motion In Limine (Documents and Witnesses Not Timely Disclosed)*

■ Defendant filed its Initial Disclosures on September 2, 2001. It identified seven potential fact witnesses, (James Henderson, Lori Courtney, Crystal Johnson, Phillip Spottwood, Richard Miller, Cheri Reid and Thurman Dutton) and two "documents" that were really files, (the OWCP file, and the Reports of Investigation of plaintiff's complaint produced in conjunction with her complaints to the EEOC). Discovery closed in February 2002.

By letter dated December 12, 2002, defendant's counsel transmitted (1) a tape showing the 1999 OIG Quarterly Training, (2) the Interagency Agreement between the Public Health Service and GSA, (3) GSA's Medical Standards and related memorandum, and (4) letters to and from Karen Coles regarding her complaints about Dr. Butler.

Counsel said of these documents:

These materials recently came to my attention. I have been unable to determine whether they have already been provided to you, and am not certain whether they are even responsive to the plaintiff's discovery requests. Nevertheless, because they may be used in connection with testimony in this case, I am providing them to you out of an abundance of caution.

*Plaintiff's Second Motion in Limine,* Exhibit B.

On January 6, 2003, defendant's counsel transmitted a copy of the Merit Promotion file for the GS–14 position for which plaintiff

applied in early 1999. She repeated the paragraph just quoted.

The next day, plaintiff's counsel, less than enthralled with these disclosures, wrote back. He stated that he had received what he called "several hundreds of pages of unidentified documents which it transmitted." *Plaintiff's Second Motion in Limine,* Exhibit D. Noting that discovery had closed a year ago, he stated:

> Unless you provide us with a specific identification of the documents in question, the testimony defendant intends to elicit about them, the identities of the witnesses from whom defendant intends to elicit this testimony, and an explanation of why these documents were not disclosed earlier, you will leave us no choice but the [*sic*] seek their exclusion should defendant attempt to rely upon them for any purpose in this litigation.

*Id.*

True to his word, plaintiff objects to defendant's introducing documents that were transmitted by the letters of December 12, 2002, and January 6, 2003.

As just explained, Fed.R.Civ.P. 26(e) requires a party who had made an initial disclosure or responded to a request for discovery to supplement its disclosure or response if that party learns that in some material respect the information previously disclosed is incomplete. The letters of December 12, 2002, and January 6, 2003, were not in compliance with this requirement for the obvious reason that their author did not even consider their relation to the defendant's earlier disclosure. Instead she professed ignorance of their relation to the defendant's prior disclosure. In reality, defendant's counsel was attempting to rescue the defendant from its failure to disclose the documents when it should have, so that defendant could use them at trial, despite its failure to disclose them during the discovery period. To permit that stratagem and let a party use at trial evidence it did not disclose during discovery under the guise of "correcting" an earlier disclosure when that party does not even bother to indicate what it is correcting would gut the discovery rules.

Understandably, the defendant does not defend what it has done or claim, as the Rule permits, that its failure to disclose was substantially justified. FED.R.CIV.P. 26(c)(1). Instead, it argues that its not disclosing the documents was harmless because plaintiff has had the documents and never moved for an enlargement of the discovery deadline to gather information to meet their significance.

To say that disclosure after the discovery deadline is harmless ignores that a central purpose of setting a discovery deadline is to move the case expeditiously forward from the end of discovery, through dispositive motions, to pre-trial and trial. Disclosures made after the discovery deadline threaten the disruption of that schedule if, in reality, the period of discovery and disclosure does not end when a judge says it is supposed to. While such disruption has to be tolerated when the belated disclosure is substantially justified because disclosure during the discovery period was impossible, the interest in having meaningful deadlines should require the exclusion of the belated disclosure when the tardy party provides no reason whatsoever for the lateness of its response.

Moreover, saying that plaintiff could have moved for an enlargement of the discovery deadline ignores that Judge Kessler was hardly obliged to grant it. To the contrary, she specifically indicated that she would not allow any enlargement of the deadlines set. *Plaintiff's Second Motion In Limine Regarding Documents and Witnesses Not Timely Disclosed* at ¶ 4.

I, therefore, reject defendant's contention that plaintiff was at fault for not moving for an enlargement of time to complete discovery. I find that defendant did not comply with its obligations as to the disclosure of the documents and witnesses and I must invoke the automatic sanction required by Fed. R.Civ.P. 37(c)(1) of excluding the evidence unless defendant establishes that the failure to disclose the document or the witness was harmless. I will not make the determination of harmlessness now, however. First, the parties have spoken of generic harm or have used examples, and I am presently confronted with ruling as to specific witnesses and documents. Second, it has been my consis-

tent experience that parties rarely introduce into evidence all of the exhibits they list in their pre-trial statements and I see no reason to expend judicial resources on documents that may never be introduced. We shall instead proceed as follows.

Any witness not identified in defendant's Initial Disclosure and any document not identified in the two files described in defendant's Initial Disclosure will not be permitted to be introduced into evidence until a *voir dire*, outside of the presence of the jury, is held. At that hearing, I intend to follow the cases that have held that the burden of proving harmlessness on the party that did not make the disclosure, which, in this case, is the defendant.[1]

In order to expedite the hearing,[2] I will now indicate how I will use the following criteria, with the understanding that they are not exclusive and I will consider any other argument as to harm or lack of it either party wishes to make.

The testimony of a witness or the introduction of a document will be deemed harmful if it was likely that a reasonable attorney, learning of the witness or the existence of the document, would have engaged in additional discovery or sought to meet the probative force of the testimony or document by creating countering evidence.

Finally, in the interest of expediting my consideration of that issue at the *voir dire*, I will require defendant to do what it should have done in the first place. It shall identify by exhibit number those documents that were transmitted by the letters of December 12, 2002, and January 6, 2003, and indicate, if appropriate, to what specific discovery request they were responsive.

## IV. *Plaintiff's Third Motion In Limine (Medical Standards and Training Promulgated after Plaintiff's Removal)*

 Plaintiff has moved to exclude evidence pertaining to the medical standards

and physical requirements for the position of Special Agent, which were promulgated by GSA sometime after plaintiff's reassignment in March 1999 to the position of management analyst, but before she sought reinstatement in April 2001 to her former position as Special Agent. The issue is whether these materials are relevant to her claim of post-complaint retaliation premised on GSA's response to her request for reinstatement.

The evidence in question consists of internal GSA correspondence from 1999 and 2000 concerning the approval and implementation of revisions to the medical standards for the Special Agent position. Defendant has also proffered a 1999 training videotape which presumably provides a more graphic illustration of these medical standards in operation.

I question the relevance of such items at this stage of the proceedings. Defendant does not assert that it denied plaintiff's request for reinstatement in 2001 based on her inability to meet the new medical standards, nor has it offered these standards to justify its decision to offer plaintiff the opportunity to attend a fitness for duty evaluation before she would be considered for reinstatement. Instead, defendant offered the fitness for duty examination to assist in determining whether plaintiff had any medical limitations that could affect her reinstatement as a Special Agent; it never mentioned any new standards. Instead, the letter dated June 20, 2001, from James Matthews[3] to Coles, stated that the proposed fitness-for-duty referral was necessary because Dr. Wilsons's report of February 27, 2001 did not contain "sufficient medical documentation for [them] to use in making a decision regarding [her] ability to resume full, unrestricted work as a GSA OIG Special Agent." *Defendant's Motion to Dismiss claim Regarding Reinstatement After EEOC Decision and Opposition to Plaintiff's Partial Motion to Strike Reply Brief* at Exhibit 3.

---

1. *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106–07 (9th Cir.2001).

2. Note that I have already precluded defendant's use of Exhibit 301, the supplemental opinion of Dr. Butler.

3. Matthews is Human Resources Director for the Office of Inspector General, General Services Administration.

Given that defendant's offer of a fitness for duty evaluation necessarily was preliminary to any determination on whether the plaintiff was capable of fulfilling the medical requirements of the Special Agent position, however they may be defined, I will exclude any evidence pertaining to the standards promulgated after the Plaintiff's reassignment in 1999.[4]

### V. Plaintiff's Fourth Motion In Limine (Agency Relationship with Dr. Scott)

Plaintiff intends to establish that on May 14, 1998, defendant contracted with Washington Occupational Health Associates to perform a fitness for duty examination of plaintiff. *Plaintiff's Opposition to Defendant's Motion for Summary Judgment* at Exhibit 27. Dr. Samuel Scott, employed by Washington Occupational Health Associates, performed the examination and found plaintiff fit for duty. *Id.*

Plaintiff seeks to prevent defendant from contesting that Dr. Scott was its agent and acting within the scope of his duties when he performed the examination. Plaintiff will request that the jury be instructed, in accordance with the principle articulated in Standardized Civil Jury Instructions for the District of Columbia, that the acts of an agent of a government agency within the scope of his authority are, under the law, the acts of the agency itself.

It would first appear that a government argument that Dr. Scott was not its agent or not acting within the scope of his duties is impermissible if the government does not challenge the veracity of Exhibit 27, its contract with Dr. Scott's company. It would be improper to make an argument without any evidentiary support.

As to the instruction itself, I will leave this matter for discussion at the pre-trial and, if necessary, development of the evidence at trial. Suffice to say that, plaintiff is not alleging that defendant has any contractual or tort liability because of defendant's retention of Dr. Scott. The instruction proposed may thereafter need further refinement before it may be given to the jury.

### Defendant's Motions In Limine

### VI. Defendant's Motion In Limine to Exclude Plaintiff from Testifying About What She Allegedly Heard from the DOL Regarding her Claim for Workers Compensation and her Opinions as to the Meaning of DOL's Actions

Defendant seeks an order prohibiting plaintiff from (1) offering testimony concerning statements made to her by employees and contractors of OWCP, and (2) offering her opinion regarding the meaning of such statements, or rulings made by OWCP in connection with the plaintiff's workers compensation case.

As conceded by both parties, plaintiff's claim of Title VII discrimination rests on whether she was disabled from performing the full range of her duties as a GS–1811 Special Agent. In this context, the disposition of Plaintiff's claims for workers' compensation benefits seem relevant under Fed.R.Evid. 402, and records of OWCP fact-findings or conclusions of law may be introduced consistent with Fed.R.Evid. 803(8).

■ However, statements made by OWCP personnel to plaintiff in the course of her benefits application process, as well as statements made by plaintiff to OWCP, are of questionable probative value in showing plaintiff's ability to perform the functions of her job, which must be evaluated according to the medical evidence. Moreover, at this stage, neither plaintiff's state of mind in applying for workers compensation benefits, nor the motives of OWCP personnel in advising plaintiff about the benefits application process, are at issue. Therefore, I am left to conclude that such statements are being offered to prove what they would assert, *i.e.*, that plaintiff was not disabled, notwithstanding any OWCP determination to the contrary. As such, they are clearly hearsay under Fed.R.Evid. 801, and do not fall under any of the hearsay exceptions in Fed.R.Evid. 803, 804, or 807. Also, since there has been no express or implied charge of recent fabri-

---

4. Note that these materials are also subject to my order pertaining to materials produced after the close of discovery.

cation, improper influence or motive, the statements are not admissible under Fed. R.Evid. 801(d)(2).

Additionally, plaintiff may not offer opinion testimony as to the meaning of administrative determinations made by OWCP concerning her workers' compensation case. Plaintiff has no specialized knowledge of workers compensation law or OWCP procedures such as would qualify her as an expert under Fed.R.Evid. 702, nor would her opinion on these matters prove helpful in determining a fact in issue, as required for lay opinion testimony under Fed.R.Evid. 701.

For these reasons, defendant's motion is granted. Plaintiff may not testify as to statements made to her by OWCP employees or contractors regarding her physical capacity or incapacity for work, or to explain the medical, legal, or factual basis of any OWCP determination concerning her eligibility for workers compensation.

## VII. *Defendant's Motion In Limine to Preclude Evidence from EEO Administrative Proceedings*

According to her declaration, M. June Love ("Love") was the EEO counselor in what Love calls the "informal EEO process" initiated by plaintiff on February 2, 1997, concerning plaintiff's reassignment to the Washington Regional Office of the GSA, Office of the Inspector General. *Declaration of M. June Love, Defendant's Motion in Limine to Preclude Evidence from EEO Administrative Proceedings* at Exhibit B.

In that declaration, she explains that she interviewed Regional Inspector General Thurman Dutton. According to Love, Dutton was uncooperative. He declined to shake her hand when she extended it and he was abrupt when responding to her questions. According to Love, Dutton "clearly indicated that he disliked Ms. Coles and did not respect her professional abilities." *Id.* at ¶ 9.

She then states:

I was not acquainted with Mr. Dutton either personally or professionally before meeting him in connection with this matter, and do not believe that he had much contact with Ms. Coles before I inter-

viewed [him]. I therefore have no reason to attribute his hostility to anything other than the fact that Ms. Coles had utilized the informal EEO process.

*Id.* at ¶ 10.

Defendant objects to this testimony on the grounds that an EEO counselor's discussions with the persons she interviews are privileged both as a matter of agency practice and because they fall within the protection of Fed.R.Evid. 408, which bars receipt of conduct or statements made during compromise negotiations when offered to prove liability. Additionally, defendant attacks the paragraph just quoted as an improper lay opinion.

The latter contention is well taken. While Love might be able to testify as to what she saw and heard, her divination of why Dutton acted crosses the line from a legitimate opinion based on a perception to a speculation as to a witness's motives. It is the difference between a witness testifying that a man was drunk and that a man was drunk because he was drowning his sorrows ever since his wife left him. Testimony as to why a person does something cannot be based on perception as Fed.R.Evid. 701 requires. It has to be based on a ratiocination as to why a witness did something.

Fed.R.Evid. 408 expressly authorizes the receipt of evidence of conduct or statements if offered for a purpose other than the imposition of liability, such as to show a witness's bias or prejudice. The problem for plaintiff is that the evidence of Dutton's bias is being offered to establish liability. The purpose of Love's testimony is to show that Dutton harbored a retaliatory animus against plaintiff and is therefore being offered to establish liability and not merely to impeach Dutton's testimony.

Finally, there is a vital societal interest in the conciliation and mediation of EEO claims that is advanced by the confidentiality of all discussions with an EEO counselor. Surely, federal employees, who face potential charges of discrimination, will be much less candid if they know the counselor they are talking to is monitoring their attitude and may some day testify as to whether or not

they were cooperative. While this case hardly justifies creating a privilege, because of the other reasons to preclude Love's testimony, it serves as an additional motivation to let the jury, rather than Love, judge Dutton's attitude toward plaintiff on the basis of its own perception of him.

### VIII. Defendant's Motion In Limine Regarding Plaintiff's Whistleblowing Complaint

Plaintiff has proffered an excerpt from a transcript of an interview with her former supervisor, Timothy Dutton, which was conducted on May 20, 1999, by the Merit Systems Protection Board, Office of Special Counsel ("OSC") pursuant to an investigation under the Whistleblower Protection Act. *Plaintiff's Opposition to Defendant's Motion for Summary Judgment* at Exhibit 16. In this excerpt, Dutton responds to questions from the investigator concerning a conversation he had with plaintiff in August 1997, in which he related a story to her about a "jew psychiatrist." Plaintiff has submitted this statement as evidence tending to show the existence of a hostile work environment. *Memorandum of Points and Authorities in Partial Opposition to Defendant's Motion In Limine to Preclude All Evidence Relating to Plaintiff's Whistleblowing Complaint* at 3.

Defendant fears that the introduction of the OSC transcript will result in a wider inquiry into the nature of the allegations made by the plaintiff against Dutton under the Whistleblower Protection Act. Defendant has therefore moved to exclude any evidence that makes reference to the substance of the OSC investigation, *i.e.,* Mr. Dutton's alleged downloading of inappropriate material from the Internet. Defendant contends, and plaintiff apparently agrees, that such evidence is not relevant to the Title VII discrimination claim, and is unfairly prejudicial and likely to mislead the jury. Given that the parties agree as to the irrelevance of plaintiff's whistleblowing claim, and have not submitted any materials that go to the substance of this claim, it is not necessary for the court at this time to rule on the admissibility of such evidence. As to the admissibility of the OSC transcript excerpt, this issue has become moot since I have held that plaintiff has not stated a claim based on a theory of a hostile work environment.

### IX. Defendant's Motion In Limine to Preclude Evidence Involving Allegations of Discrimination against Eddie Carroll or Other Employees

■■■■ Sometime in the 1980's, an African American man named Eddie Carroll filed a discrimination complaint against Thurman Dutton, also an African American. The complaint arose from an investigation of Carroll by Dutton that led to Carroll's being disciplined. The EEOC found, however, that Dutton's employing agency had no reasonable basis to discipline Carroll based upon the investigation Dutton conducted. Having found that Dutton's independence in conducting the investigation was questionable, it concluded that Dutton participated in the racial discrimination perpetrated against Carroll.

Plaintiff wants to call Carroll as a witness and introduce into evidence the EEOC Recommended Decision that was so critical of Dutton and found that he discriminated against a fellow African American.

The parties are agreed that other acts of discrimination, similar to the discrimination charged, perpetrated by a person accused of the same discrimination in the case on trial are admissible to prove motive and intent.[5]

---

**5.** Evidence of other "bad acts" is never admissible simply to establish a propensity to engage in similar acts. Fed.R.Evid. 404(b). Provided its relevance outweighs it tendency to prejudice the opponent of the evidence unfairly, evidence of other acts of discrimination or retaliation similar to the discrimination or retaliation charged have been admitted to show, for example, motive or intent. *Miller v. Poretsky*, 595 F.2d 780 (D.C.Cir. 1978); *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1155 (10th Cir.1990); *Herman v. National Broadcasting Co.*, 744 F.2d 604, 609 (7th Cir.1984);

*Jay Edwards Inc. v. New England Toyota Distributor*, 708 F.2d 814, 824 (1st Cir.1983), *cert. denied*, 464 U.S. 894, 104 S.Ct. 241, 78 L.Ed.2d 231 (1983); *Hariston v. WMATA*, 1997 WL 411946 (D.D.C. April 10, 1997); *Cardona v. Skinner*, 729 F.Supp. 193, 199 (D.P.R.1990). *See also Dougherty v. Barry*, 604 F.Supp. 1424, 1439 (D.D.C.1985) (other acts of retaliation probative that a custom or policy of retaliation existed). By the same token, only discrimination or retaliation of the same character and type as that is alleged is probative. To establish that a prior

However, even relevant evidence should be excluded if its tendency to create unfair prejudice, mislead the jury or confuse the issues substantially outweighs its probative value. There should also be considered in that calculus the possibility of undue delay, waste of time, and the presentation of cumulative evidence. FED.R.EVID. 403.

First, as to the report, the EEOC factual findings are necessarily based on assessments of the credibility of other witnesses besides Dutton and Carroll. While the jury will see Dutton and Carroll, their not seeing all those other witnesses distinguishes this case from the ordinary case where the EEOC findings may be admitted as to the very case on trial. Thus, in contrast to the traditional Title VII case where the jury sees the same witnesses the EEOC did, the jury in this case will be asked to accept the EEOC's assessment of the credibility of witnesses, other than Carroll and Dutton, that the jury will never see or hear. Moreover, introducing EEOC fact findings creates a significant risk of unfair prejudice, since the jury might find it difficult to "evaluate independently evidence of discrimination after being informed of the investigating agency's final results." *See Beachy v. Boise Cascade Corp.*, 191 F.3d 1010, 1015 (9th Cir.1999); *Lang v. Kohl's Food Stores*, 217 F.3d 919, 927 (7th Cir.2000).

Second, there is a substantial risk that much time will have to be expended in the exploration of Carroll's claim against Dutton. Carroll will have to explain what happened to him, and Dutton, in fairness, must be permitted to rebut this testimony. Hence there is the risk of a trial within a trial that so frequently justifies the courts in excluding "other bad acts" evidence. In this "mini trial," the witnesses would be testifying about events that occurred twenty years earlier, increasing the risk that their recollections will be poor and diminishing the probative value of such testimony. Such evidence has also been excluded on the basis that it is too remote in time. *See Moorhouse v. Boe-*

*ing Co.*, 501 F.Supp. 390, 392–94 (E.D.Pa. 1980), *aff'd without opinion* at 639 F.2d 774 (3rd Cir.1980); *Hunter v. Allis–Chalmers Corp.*, 797 F.2d 1417, 1423 (7th Cir.1986).

The third factor affecting the probative value of Carroll's testimony is the nature of his complaint against Dutton versus that of the plaintiff in the present case. "The probative value of other discriminatory acts depends not only on their relevance to the acts of which the plaintiff complains but also on the nature of the discrimination charged." *Hunter*, 797 F.2d at 1423. *Accord: White*, 1998 WL 429842, at *5. Here, Carroll's testimony relates to Plaintiff's claim of racial discrimination, which will not go forward since I have granted the defendant's Motion for summary judgment and concluded that she has failed to allege sufficient facts to permit a reasonable fact finder to rule in her favor. Because Carroll's testimony has nothing to do with her complaint of retaliation, its probativeness is much more constricted and narrow than the other bad acts evidenced in other Title VII cases.

After weighing the pertinent factors under Fed.R.Evid. 403, I find that both Carroll's testimony and the EEOC report must be excluded because their tendency to create unfair prejudice, confuse the jury and waste time on a collateral issue substantially outweighs their probative value.

## CONCLUSION

I. Defendant may not introduce Dr. Butler's supplemental expert report.

II. Plaintiff's request to exclude defendant from setting-off the damage award by the amount of worker's compensation received from the Department of Labor is deferred until the damage assessment phase of the trial.

III. Plaintiff's request to exclude the untimely disclosure of witnesses and documents is deferred until trial where a voir dire will occur. Defendant must also identify by ex-

discriminatory act is probative of the intention or motive of the defendant, there must be some reason to believe that his motivation or intention in the acts in question was similar to his motivation or intention on the prior occasion.

*White v. U.S. Catholic Conference*, 1998 WL 429842, at *5 (D.D.C. May 22, 1998).

hibit number those documents transmitted by the letters of December 12, 2002 and January 6, 2003 and indicate to which discovery request they were responsive by July 11, 2003.

IV. Defendant may not introduce medical standards or training promulgated after plaintiff's reassignment in 1999.

V. Plaintiff's request to prevent defendant from contesting an agency relationship with Dr. Scott is deferred to pre-trial discussion and if necessary, specific jury instructions.

VI. Plaintiff may not testify as to statements made to her by OWCP employees or contractors regarding her physical capacity for work *or* to explain the medical, legal, or factual basis of any OWCP determination concerning her eligibility for workers compensation.

VII. Plaintiff may not testify or introduce into evidence EEO counselor Love's testimony as to her encounter with Dutton.

VIII. Plaintiff may not admit the OSC transcript because the issue is moot. I have already held that plaintiff has not stated a claim based on a hostile work environment.

IX. Plaintiff may not admit either Carroll's testimony or the EEOC report in Carroll's case. An Order accompanies this Memorandum Opinion.

## ORDER

In accordance with the accompanying Memorandum Opinion, it is, hereby,

**ORDERED** that Plaintiff's *Motion to Strike Defendant's Supplemental Expert Report* [# 51] is **GRANTED**. It is further, hereby,

**ORDERED** that Plaintiff's *First Motion In Limine (Collateral Source)* [# 92] is **DENIED**. It is further, hereby,

**ORDERED** that Plaintiff's *Second Motion In Limine (Documents and Witnesses Not Timely Disclosed)* [# 93] is **DENIED**. It is further, hereby,

**ORDERED** that Plaintiff's *Third Motion In Limine (Medical Standards and Training Promulgated after Plaintiff's Removal)* [# 94] is **GRANTED**. It is further, hereby,

**ORDERED** that Plaintiff's *Fourth Motion In Limine (Agency Relationship with Dr. Scott)* [# 95] is **DENIED**. It is further, hereby,

**ORDERED** that Defendant's *Motion In Limine to Exclude Plaintiff from Testifying about What She Allegedly Heard from the DOL Regarding her Claim for Workers Compensation and her Opinions as to the Meaning of DOL's Actions* [# 96] is **GRANTED**. It is further, hereby

**ORDERED** that Defendant's *Motion In Limine to Preclude Evidence from EEO Administrative Proceedings* [# 99] is **GRANTED**. It is further, hereby,

**ORDERED** that Defendant's *Motion In Limine Regarding Plaintiff's Whistleblowing Complaint* [# 98] is **GRANTED**. It is further, hereby,

**ORDERED** that Defendant's *Motion In Limine to Preclude Evidence Involving Allegations of Discrimination against Eddie Carroll or Other Employees* [# 112] is **GRANTED**. It is further, hereby,

**ORDERED** that Plaintiff's *Motion to Partially Strike Defendant's Reply Memorandum or, in the Alternative, for Leave to File Sur–Reply* [# 65] is **DENIED**. It is further, hereby,

**ORDERED** that Plaintiff's *Motion to Suspend Further Briefing on Defendant's Motion to Dismiss Claim Regarding 2001 Reinstatement* [# 80] is **DENIED**.

Finally, it appearing that both sealed and unsealed versions of certain documents were filed, it is, therefore, hereby,

**ORDERED** that Defendant's *Motion to Dismiss and For Summary Judgment* [# 50] and Defendant's *Motion to Dismiss Claim Regarding 2001 Reinstatement After EEOC Decision and Opposition to Plaintiff's Partial Motion to Strike Reply Brief* [# 78] are **DENIED** as moot.

**SO ORDERED.**